UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTONIO JONES,

      Petitioner,

v.                                                       Case No. 11-C-0695

MICHAEL BAENEN,

      Respondent.

## DECISION AND ORDER ON HABEAS CORPUS PETITION

### I. INTRODUCTION

On July 21, 2011, the petitioner, Antonio Jones ("Jones"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On January 30, 2012, the district judge to whom the case was originally randomly assigned issued an order under Rule 4 of the Rules Governing § 2254 Cases, requiring that the respondent file an answer, motion, or other appropriate response to the petition within 60 days of the date of that order. Thereafter, upon both parties' consenting to magistrate judge jurisdiction, the case was reassigned to this court for processing and entry of final judgment.

The parties have now fully briefed the claim set forth in Jones's petition and it is ready for resolution.[1] That claim is as follows:

> Appellate counsel initially presented the issue of Jones entering into the plea with the understanding that the state would recommend 20 years, and that Jones would not receive more than 15 years, and more likely would not receive more than 7 years initial confinement and 3 years extended supervision. However, counsel abandoned

---

[1] In his petition, Jones set forth two grounds for habeas relief: (1) that his plea of guilty was not knowingly, intelligently, and voluntarily entered, and (2) that his appellate counsel was constitutionally ineffective. In his reply brief, however, Jones pronounces that he is not pursuing his first claim, acknowledging that such claim was procedurally defaulted. Thus, the only claim that remains is ineffective assistance of appellate counsel.

> the claim on appeal. Jones file a <u>Knight</u> petition arguing this claim. This claim has now been exhausted.

(Pet. 7.) In his reply brief, Jones further identifies the claim to be "that appellate counsel was in fact ineffective in failing to present and argue Jones' confusion as to the terms of the plea as well as the nature of the crime." (Pet'r's Reply Br. 2.)

For the reasons that follow, Jones's petition will be denied and this action will be dismissed.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The various written submissions of the parties demonstrate that on November 29, 2007, Jones entered a guilty plea to one count of first-degree reckless homicide, in violation of Wis. Stat. § 940.02(1), in the Milwaukee County Circuit Court. On February 7, 2008, Jones was sentenced to serve thirty-five years of initial confinement followed by fifteen years of extended supervision.

On September 2, 2008, Jones filed a direct appeal of his conviction in state court with the assistance of counsel, first, by filing a motion for postconviction relief in the Milwaukee County Circuit Court. In his motion, Jones argued that he should be allowed to withdraw his plea because the circuit court did not adequately explain the charges and otherwise ensure that Jones understood the nature of the proceedings and, further, that Jones believed the plea agreement to be different than the one that was recited and agreed upon in court. On January 29, 2009, the circuit court held a postconviction hearing on Jones's motion. On that same date, the circuit court denied Jones's motion orally. A written order denying Jones's motion for the reasons stated on the record at the January 29, 2009 hearing was entered on February 4, 2009.

Jones thereafter appealed his conviction and the circuit court's order denying his postconviction motion. On appeal, Jones argued that his plea was not knowing, intelligent, and voluntary because the circuit court did not ensure his understanding of the charges and the elements of the offense to which he was pleading guilty. On November 17, 2009, the court of appeals affirmed

2
Case 2:11-cv-00695-WEC   Filed 10/23/12   Page 2 of 15   Document 20

the circuit court's judgment of conviction, concluding that Jones was not entitled to relief on the merits of his claims.

Jones's appellate counsel then submitted a no-merit petition for review to the Wisconsin Supreme Court. Pursuant to Wis. Stat. § 809.32(4), the supreme court required Jones to file a supplemental statement in support of the petition for review. However, Jones never filed a supplemental statement. Thus, on March 16, 2010, the supreme court denied Jones's petition for review.

Thereafter, on May 24, 2010, Jones filed in state court a petition for a writ of habeas corpus pursuant to *State v. Knight*, 168 Wis.2d 509, 484 N.W.2d 540 (1992). In that petition, Jones alleged ineffectiveness of appellate counsel for failing to raise on appeal Jones's alleged confusion regarding sentencing recommendations pursuant to the plea deal. On February 3, 2011, the court of appeals denied Jones's petition *ex parte*. The court concluded that the claim of confusion as to sentencing recommendations was without sufficient merit to have been included in Jones's direct appeal.

On March 9, 2011, Jones petitioned the Wisconsin Supreme Court for review, asserting ineffective assistance of appellate counsel for failing to raise Jones's failure-to-understand-sentencing-recommendations argument on direct appeal. On May 24, 2011, the supreme court denied Jones's petition for review. Thereafter, on July 21, 2011, Jones filed his federal habeas corpus petition.

The facts giving rise to Jones's conviction and his federal habeas corpus claim of ineffectiveness of appellate counsel are found in the two decisions of the Wisconsin Court of Appeals. First, the decision of November 17, 2009:

> On March 21, 2007, then sixteen-year-old Jones skipped school to hang out with friends and smoke marijuana. He then got the idea to commit a robbery so he could have money to buy clothes. With a gun, he attempted to rob Scott Huggins, a random person he encountered at a gas station. When Huggins attempted to get the

gun away from Jones, Jones shot him twice. A wound to the abdomen was non-lethal but a shot to the back pierced Huggins' aorta, causing him to bleed to death.

Jones was charged as an adult with first-degree intentional homicide while armed and attempted armed robbery. Jones challenged the constitutionality of the statute giving the adult court original jurisdiction, and sought a reverse waiver into juvenile court. When those motions were both denied, Jones decided to enter a plea to avoid a life sentence. In exchange for a guilty plea, the State agreed to amend the homicide charge to first-degree reckless homicide while armed and to dismiss the attempted armed robbery charge. The State also agreed to make a sentencing recommendation of thirty-five years' initial confinement and fifteen years' extended supervision. Following a plea colloquy, the court accepted the plea and found Jones guilty, sentencing him to the term the State recommended.

Jones then filed a motion to withdraw his plea. He argued he did not understand what the plea agreement called for, asserting various sentencing recommendations had been presented to him. Jones also sought to withdraw his plea based on his allegation that the circuit court failed to fully explain all the elements of first-degree reckless homicide to him. Following an evidentiary hearing at which Jones and trial counsel testified, the circuit court denied the motion. Jones appeals.

. . .

On appeal, Jones complains only that he did not understand the elements of the charge against him. He asserts this lack of understanding comes from (1) the court's failure to explain the elements and (2) Jones' partial fetal alcohol syndrome. That is, Jones alleges there was an error in the plea colloquy, and there was a factor extrinsic to the colloquy that affected his understanding of the plea.

. . .

The alleged defect in the plea colloquy was the circuit court's failure to advise Jones of all elements of first-degree reckless homicide. There are multiple ways in which the circuit court can advise a defendant of the elements, including summarizing the crime by reading from the applicable jury instructions or statute. Here, the circuit court did inquire whether Jones understood:

> that in order to be convicted of this offense, the state would have to prove each and every element of the offense and that is by evidence that is beyond a reasonable doubt. With respect to the amended charge of first-degree reckless homicide while armed, the state would have to prove that . . . while using a dangerous weapon, you did recklessly cause the death of Scott Huggins, another human being, under circumstances which showed utter disregard for human life, and you did this contrary to Wisconsin Statutes Section 940.02(1) and 939.63.

4

That is, the court set out the elements as listed in the statute. Jones asserts that this approach was deficient, in part because it does not discuss or explain the element of "criminally reckless conduct," which was detailed in the jury instructions.

However, at the evidentiary hearing, defense counsel testified it was her practice to discuss with her clients the jury instructions for an original charge as well as the instruction of any amended or reduced charge the State was offering in a plea agreement. Counsel testified she was "sure I did" go over those instructions with Jones, and that he had no questions of her. She also testified she would have discussed the elements of first-degree reckless homicide with Jones more than once. Jones acknowledged viewing the jury instructions prior to the plea hearing, although he did not recall going over them. At the plea hearing, Jones confirmed he understood the elements of his crime and that he had sufficient time to discuss the case with his attorney. Also at the plea hearing, counsel had advised the court that she was satisfied Jones understood the elements and the plea. Ultimately, the circuit court concluded, based on its review of the colloquy and the evidentiary hearing, that Jones understood the elements and his plea was knowing, intelligent, and voluntary. We agree with this conclusion.

Jones also contends that his partial fetal alcohol syndrome prevented him from understanding the plea, and better care should have been taken to ensure his comprehension in light of this condition. He contends that he was fidgety and not listening at the colloquy, instead giving only robotic answers, undermining the validity of his plea.

. . .

Jones' answers to the court's questioning in the plea colloquy reveal he was doing more than giving robotic answers while not listening: he had to be paying enough attention to know when to shift his answers from "yes," to the question that he understood the plea, to "no," he had not been made any promises other than the plea agreement, back to "yes," the criminal complaint provided a factual basis for the plea. The circuit court found that he was "responding to the questions that were put forth to him[.]" Further, Jones' partial fetal alcohol syndrome was reported to impact his impulse control, not his ability to comprehend. Indeed, Jones admitted he took the plea to avoid a potential life sentence if convicted of first-degree intentional homicide—a cogent, rational choice. Jones simply does not show any manifest injustice would result from a failure to permit plea withdrawal.

(Ct. App. 11/17/09 Dec. ¶¶ 2-4, 6, 10-12, 14; Dkt. No. 14-8; citations omitted; footnote omitted.)

Next, the decision of February 3, 2011, addressing Jones's *Knight* petition, in which he challenged the effectiveness of his appellate counsel (and which provides the foundation for his federal habeas claim):

Antonio J. Jones, *pro se*, petitions this court for a writ of *habeas corpus*, pursuant to ***State v. Knight***, 168 Wis. 2d 509, 484 N.W.2d 540 (1992). He contends that appellate counsel, Sara Eberhardy, was ineffective because she "abandoned" an argument on appeal that she had raised on Jones's behalf in a postconviction motion. We conclude that Jones's petition should be denied *ex parte*. See WIS. STAT. RULE 809.51(2) (2007-08); *see also* ***State ex rel. LeFabre v. Abrahamson***, 103 Wis. 2d 197, 202, 307 N.W.2d 186 (1981).

Jones was charged with first-degree intentional homicide while armed and attempted armed robbery. Although sixteen years old at the time, Jones was charged as an adult. A constitutional challenge to the adult court's jurisdiction failed, and Jones decided to enter a plea agreement in order to avoid a potential life sentence on the intentional homicide charge. In exchange for Jones's guilty plea, the State agreed to amend the homicide charge to first-degree reckless homicide while armed, to dismiss the attempted robbery charge, and to make a sentencing recommendation of thirty-five years' initial confinement and fifteen years' extended supervision. The court accepted the plea and sentenced Jones according to the State's recommendation.

Attorney Eberhardy was appointed as postconviction/appellate counsel. She filed a postconviction motion to withdraw the plea, alleging that Jones did not understand the scope of the plea agreement because trial counsel had advised him of multiple sentencing scenarios. The motion also asserted that Jones's plea was unknowing because the circuit court had failed to explain all the elements of first-degree reckless homicide during the plea colloquy. The court held an evidentiary hearing on the motion; both trial counsel and Jones testified. The court denied the motion.

On appeal, counsel renewed her argument that Jones had failed to understand the elements of first-degree reckless homicide. We agreed with the circuit court's conclusion that Jones understood the elements and entered a knowing, intelligent, and voluntary plea. *See* ***State v. Jones***, No. 2009AP498-CR, unpublished slip op., ¶ 11 (WI App Nov. 17, 2009). We also concluded that plea withdrawal was not necessary to correct a manifest injustice—Jones had rationally chosen a plea over a possible life sentence. Id., ¶ 14. Accordingly, we affirmed the judgment and order.

Jones now asserts that Attorney Eberhardy was ineffective as appellate counsel because she abandoned the issue relating to his alleged confusion over the sentencing recommendations. Relying on ***Mason v. Hanks***, 97 F.3d 887, 893 (7th Cir. 1996), he contends that "[g]iven that the identified issue is apparent and was argued in the postconviction motion, it can hardly be said that counsel's omission of this issue from her appellate brief was sound strategy. . . . Simply put, counsel believed that this issue and [sic] merit and thus should have presented it on appeal." We disagree with Jones's assessment.

A defendant alleging that counsel has been ineffective must show both that counsel performed deficiently and that the deficiency was prejudicial. *See* ***State ex***

6

*rel. Schmelzer v. Murphy*, 201 Wis. 2d 246, 253, 548 N.W.2d 45 (1996); *see also* ***Strickland v. Washington***, 466 U.S. 668, 686 (1984). When a defendant faults appellate counsel for failing to raise certain issues on direct appeal, counsel will be deemed deficient only if the issues not raised are both significant and obvious, *and* clearly stronger than the issue actually raised. *See **Gray v. Greer***, 800 F.2d 644, 646 (7th Cir. 1986). Additionally, to show prejudice, Jones must show that had the omitted issue[] been raised, he would have prevailed. *See **State v. Johnson***, 153 Wis. 2d 121, 129, 449 N.W.2d 845 (1990).

>    Jones contends that Attorney Eberhardy thought the issue regarding his confusion about the sentencing aspect of the plea agreement had merit, so she should have raised in on appeal. We do not agree. Counsel clearly thought the issue had sufficient merit to raise it in a postconviction motion in the circuit court. Her decision not to raise it on appeal, however, does not automatically suggest deficient performance. Rather it suggests that the circuit court's factual findings, legal analysis, or both so thoroughly undermine Jones's claim that further pursuit of the issue on appeal would have been fruitless. Appellate counsel, not the defendant, has the duty to identify the issues that have merit for appeal. *See **State v. Evans***, 2004 WI 84, ¶ 30, 273 Wis. 2d 192, 682 N.W.2d 784.
>
>    Further, Jones has not provided a copy of the postconviction motion, the hearing transcript, or the circuit court's decision. Thus, he fails to offer any documentary evidence, save for his own conclusory assertions, on which we can evaluate the strength of the omitted issue or the possibility that Jones could have succeeded on appeal. Accordingly, Jones also shows neither deficient performance in nor prejudice from Attorney Eberhardy's decision to not raise the sentence issue on appeal: appellate counsel is not ineffective for failing to pursue meritless challenges. *See **State v. Harvey***, 139 Wis.2d 353, 380, 407 N.W.2d 235 (1987).

(Ct. App. 02/03/11 Dec. at 1-4; Dkt. No. 14-12; footnotes omitted.)

### III. STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [State] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997). Title 28 U.S.C. § 2254 states, in pertinent part, the following:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 100 Stat. 1214, which provides, in pertinent part, that the federal courts may not grant habeas relief unless the state court's judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (citing *Hogan v. Hanks*, 97 F.3d 189, 192 (7th Cir. 1996)).

A decision is "contrary to" established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). However, in a habeas case, "[a] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [the Supreme Court's] opinions." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court need not even be aware of Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*.

A state court decision results in an "unreasonable application" of clearly established federal law when that court either: (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407; *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004).

8

However, a federal habeas court may not grant relief under the "unreasonable application" prong unless the state court's application of Supreme Court precedent "l[ies] well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (citing *Williams*, 529 U.S. at 411). Furthermore, issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

## IV. DISCUSSION

As previously stated, the petitioner's sole claim in this federal habeas proceeding is that his appellate counsel was ineffective for not presenting and arguing on appeal that "Jones enter[ed] into the plea with the understanding that the state would recommend 20 years, and that Jones would not receive more than 15 years, and more than likely would not receive more than 7 years initial confinement and 3 years extended supervision." (Pet. 7.)

Defendants in criminal cases have a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to establish an ineffective assistance of counsel claim, a defendant must demonstrate both that counsel's assistance was ineffective, and that the ineffective assistance prejudiced the defendant. A defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The *Strickland* standard is used in evaluating both the effectiveness of trial counsel and the effectiveness of appellate counsel. *See Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008) (*citing Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985)). "To establish ineffectiveness, [the

9

petitioner] must demonstrate that his appellate counsel's performance was deficient and that this deficiency prejudiced him." *Id.* Jones can prevail in this federal habeas proceeding "only if he establishes that his appellate counsel failed to raise an issue that was both obvious and clearly stronger than the issues he did raise." *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (citing *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994)).

The burden on a habeas petitioner to show that counsel's assistance was ineffective is not easily satisfied. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Furthermore, a habeas court need not address the two prongs of *Strickland* in any particular order or even address both if the defendant makes an inadequate showing as to one. In this latter regard the Supreme Court in *Strickland* stated as follows:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697.

Of course, in addition to the deference given to counsel's decisions under *Strickland*, this court's review of the state court's decision on Jones's ineffective assistance of appellate counsel claim is also circumscribed by the language of 28 U.S.C. § 2254, to wit, that the federal courts may not grant habeas relief unless the state court's judgment:

10

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Simply stated, the Wisconsin Court of Appeals' decision with respect to Jones's ineffective assistance of appellate counsel claim was neither contrary to, nor involved an unreasonable application of, *Strickland*. In Jones's case, his appellate counsel did not present on appeal the claim that Jones was allegedly confused regarding sentencing recommendations pursuant to the plea deal. But, as the court of appeals stated, the fact that appellate counsel may have thought the issue warranted being included in a postconviction motion does not necessarily mean it was an issue that, after developing a record in the trial court, warranted being included in an appeal.

> Her decision not to raise it on appeal, however, does not automatically suggest deficient performance. Rather it suggests that the circuit court's factual findings, legal analysis, or both so thoroughly undermine Jones's claim that further pursuit of the issue on appeal would have been fruitless.

(Ct. App. 02/03/11 Dec. at 4; Dkt. No. 14-12.) The court of appeals' analysis was certainly not unreasonable.

> To be sure, Jones asserts in his brief
>
> that counsel informed him that the state would recommend 20 years, and that Jones would not receive more than 15 years, and that more than likely he (Jones) would receive a sentence of 7 years initial confinement and 3 years extended supervision. Thus, Jones' argument has always been that trial counsel "promised" that Jones would not receive more than 15 years. Furthermore, Jones believed that the state was going to be recommending 20 years in prison. What further complicated and added to Jones' confusion is that the Plea Questionnaire/Waiver of Rights form Jones signed simply states "pleaded guilty to Amended Chg of 1º RH W/A State to Recc 35 yr IC & ES up to Court." Jones was never made aware of what the abbreviation IC and ES stood for, he believed that the state's recommendation was for a total of 35 years, to be divided up into what counsel had previously informed him of. Mr. Jones was surprised when he heard the State's recitation of the plea agreement as the state recommended 35 years of initial confinement, 15 years supervision, dismissal of the Attempted Armed Robbery charge, and that the defendant conveyed to Mr. Jones.

(Pet'r's Reply Br. 2.)

11

However, during the hearing on the postconviction motion, Jones testified as follows:

Q. You're sitting in court and the Judge had asked you a number of times, you understand that the maximum penalty is 60 years imprisonment, broken down into 40 years of initial confinement or 20 years of extended supervision, five years on the enhancement, for liability of 45 years of initial confinement and 20 years of extended supervision; that he did that probably a couple of times; right?

A. Yes.

Q. And he asked you if you understood that, and you said you did; right?

A. Yes.

Q. And then it was said at least four or five times, perhaps six, that the State is recommending 35 years of initial confinement and 15 years of extended supervision, and every time the judge asked you if you understood that, you said "yes;" right?

A. Yes.

Q. And you know what the number 35 means; right?

A. Yeah.

(Resp., Ex. D at 52-53; Dkt. No. 14-4.)

Moreover, his trial counsel also testified at that hearing. No where in her testimony did she say anything that would have supported Jones's claimed belief that "the state would recommend 20 years, and that [he] would not receive more than 15 years, and that more than likely he (Jones) would receive a sentence of 7 years initial confinement and 3 years extended supervision." (Pet'r's Reply Br. 2.)

In the end, the trial court found that Jones had

> made an intelligent, knowing and voluntary waiver of his rights; that there is nothing in this record that supports that somehow he was unfairly convicted on this plea; that he was informed of all of his rights, and he waived those rights.

(Resp., Ex. D at 65; Dkt. No. 14-4.)

Recall that issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). And to the extent that Jones argues that the state court's factual findings were incorrect, he has failed to rebut the presumption of their correctness by clear and convincing evidence.

The bottom line is that Jones has not demonstrated the state court's decision to be an unreasonable application of *Strickland*. Such being the case, it follows that his habeas corpus petition must be denied.

## V. CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part, as follows:

> a) Certificate of Appealability. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Under 28 U.S.C. § 2253(c), a district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court of appeals has held that this standard differs only in scope from the certificate of probable cause standard that was previously developed and applied by the courts. *See Herrera v. United States*, 96 F.3d 1010, 1012 (7th Cir. 1996). The *Herrera* court said that "a certificate of probable cause places the *case* before the court of appeals, but a certificate of appealability must identify each *issue* meeting the 'substantial showing' standard." *Id*. (emphasis added). Thus, for the court to issue a certificate of appealability to Jones, it must identify for the court of appeals the issues that are "debatable among jurists of reason; that a court *could* resolve the

13
Case 2:11-cv-00695-WEC   Filed 10/23/12   Page 13 of 15   Document 20

issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quoting *Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980)). This test was reiterated in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), *rev'd on other grounds, Miller-El v. Dretke*, 545 U.S. 231 (2005).

> Consistent with our prior precedent and the text of the habeas corpus statute, we reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.

*Id.* at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In my opinion, and for the reasons set forth in this decision denying Jones's habeas corpus petition, Jones's claim of ineffective assistance of appellate counsel does not warrant a certificate of appealability. Put simply, the petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" by demonstrating either that jurists of reason could disagree with this court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Consequently, the court will deny Jones a certificate of appealability. Of course, Jones retains the right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

**NOW THEREFORE IT IS ORDERED** that Jones's petition for a writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and hereby is **DENIED**;

**SO ORDERED** this 23rd day of October 2012 at Milwaukee, Wisconsin.

                                            **BY THE COURT**:

                                        s/ William E. Callahan, Jr.
                                        WILLIAM E. CALLAHAN, JR.
                                        United States Magistrate Judge